IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DARIS LARON HOLLIDAY,**

    **Plaintiff,**

    v.                                                                         **CASE NO. 21-3274-SAC**

**DAN SCHNURR, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. The events giving rise to his Complaint occurred during his incarceration at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). On January 3, 2022, the Court entered a Memorandum and Order (Doc. 7) directing the appropriate officials of HCF to prepare and file a *Martinez* Report. The Report was filed on February 18, 2022. (Doc. 9.)

Plaintiff alleges that on July 6, 2020, while performing his duties at HCF as a cell house porter, he was stabbed in his left eye with a broom handle by another inmate. Plaintiff alleges that the broom was given to the inmate by the on-duty sergeant in violation of policies. Plaintiff alleges that he received insufficient medical care for the injury to his eye and the delay resulted in the loss of his eye. Plaintiff names Warden Dan Schnurr and Sergeant John Doe as defendants and seeks monetary damages.

The *Martinez* Report provides that Plaintiff was let out of his cell at 11:06 p.m. on July 5, 2020, to do his cleaning duties. Plaintiff was talking to another inmate and approached his cell when the inmate poked Plaintiff in the eye with a broom handle at around 12:38 a.m. At

1

12:39 a.m., Plaintiff approached the officer's station with his shirt covering his eye and reported that he hurt his eye when he fell down the stairs. The captain's office and healthcare provider Corizon were immediately notified. At 12:41 a.m. Plaintiff was escorted to the multipurpose room to be examined by the healthcare provider. At 12:55 a.m., the healthcare provider notified security staff that Plaintiff would be taken to the Hutchinson Regional Medical Center for care.

Plaintiff was transferred to the University of Kansas Medical Center on July 6, 2020, for treatment of his injury. (Doc. 9–9, at 2.) Plaintiff was interviewed by KDOC staff the following day at the hospital, and Plaintiff indicated he did not wish to speak about the incident on the record. *Id*. Plaintiff told the staff member that the doctors were able to save his eye. *Id*. The staff member asked the nurse for an update regarding Plaintiff's injury. The nurse indicated that Plaintiff suffered a ruptured globe of the left eye. *Id*. Upon his arrival at the hospital, Plaintiff received surgery to repair a corneal laceration, a completed sclera reposition, and a resection of tissue. *Id*. When the staff member asked the nurse to make an educated presumption as to whether Plaintiff would retain his left eye, the nurse indicated she could not make that presumption.

The Sergeant on duty states that he did not provide the other inmate with the broom and that he does not know how the inmate acquired the broom. The Sergeant that normally works in that cellhouse, who was not on duty at the time of the incident, has also stated that he did not provide the inmate with a broom.

Plaintiff's personal injury claim was denied in part because Plaintiff did not follow the directions of staff to not linger outside inmates' cells and to not be so close to the bars. (Doc. 9–10, at 3.) Video footage shows that immediately prior to the incident, Plaintiff was standing outside of his assailant's cell for several minutes, at times, even leaning on the cell bars. *Id*.

In light of the *Martinez* Report, the Court is considering dismissal of this action. Plaintiff has failed to show that any staff member acted with deliberate indifference, and has failed to show personal participation by any named defendant.

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*,

429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Plaintiff has failed to show that either Defendant disregarded an excessive risk to his health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference. Plaintiff's Eighth Amendment claims are subject to dismissal.

Plaintiff has failed to show that any Defendant personally participated in the violation of his constitutional rights. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in

the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability). An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011). "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).

Plaintiff's claims against the Warden and Sergeant are subject to dismissal. *See* Doc. 9–2, at 1 (affidavit of Warden Schnurr declaring that he did not have any direct or indirect involvement in any aspect of Plaintiff's injury or care); Doc. 9–3, at 1, 3 (affidavit of Aaron Strasburg, the on-duty sergeant, declaring that porters are warned to not get close to the cell doors of the segregation inmates and that he did not provide the assailant with the broom that was used to injure Plaintiff and he does not know how the inmate obtained it); Doc. 9–5, at 1–2 (affidavit of James Smith, sergeant normally assigned to the cellhouse but off-duty at the time of the incident, declaring that porters are warned to not get close to the cell doors of the segregation inmates and he did not

provide the assailant with the broom that was used to injure Plaintiff and he does not know how the inmate obtained it).

The Court will grant Plaintiff an opportunity to respond to the *Martinez* Report and to show good cause why his Complaint should not be dismissed for the reasons set forth in this Memorandum and Order. Failure to respond by the deadline may result in dismissal of this matter without prior notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **March 28, 2022,** in which to show good cause why his Complaint should not be dismissed for failure to state a claim.

**IT IS SO ORDERED.**

Dated March 1, 2022, in Topeka, Kansas.

<u>s/  Sam A. Crow</u>
**SAM A. CROW**
**U. S. Senior District Judge**